IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC WATERMAN, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : COMPLAINT FOR VIOLATION OF THE |
| RIGNET, INC., JAMES H. BROWNING, | : SECURITIES EXCHANGE ACT OF 1934 |
| GAIL SMITH, STEVEN E. PICKETT, | : |
| KEVIN J. O'HARA, MATTIA CAPRIOLI, | : |
| DITLEF DE VIBE, KEVIN MULLOY, | : |
| KEITH OLSEN, BRENT K. | : |
| WHITTINGTON, VIASAT, INC., and | : |
| ROYAL ACQUISITION SUB, INC., | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1. On December 20, 2020, RigNet, Inc. ("RigNet" or the "Company") entered into an agreement (the "Merger Agreement") to be acquired by Viasat, Inc. ("Parent") and Royal Acquisition Sub, Inc. ("Merger Sub") (together, "Viasat") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, RigNet's stockholders will receive 0.1845 shares of Parent common stock per share.

3. On February 1, 2021, defendants filed a registration statement (the "S-4") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the S-4 fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is and has been continuously throughout all relevant times the owner of RigNet common stock.

9. Defendant RigNet is a Delaware corporation. RigNet's common stock is traded on the NASDAQ under the ticker symbol "RNET."

10. Defendant James H. Browning is Chairman of the Board of Directors of RigNet (the "Board").

11. Defendant Gail Smith is a member of the Board.

12. Defendant Steven E. Pickett is Chief Executive Officer, President, and a member of the Board.

13. Defendant Kevin J. O'Hara is a member of the Board.

14. Defendant Mattia Caprioli is a member of the Board.

15. Defendant Ditlef de Vibe is a member of the Board.

16. Defendant Kevin Mulloy is a member of the Board.

17. Defendant Keith Olsen is a member of the Board.

18. Defendant Brent K. Whittington is a member of the Board.

19. Defendants identified in ¶¶ 10-18 are referred to herein as the "Individual Defendants."

20. Defendant Parent is a Delaware corporation.

21. Defendant Merger Sub is a Delaware corporation.

**SUBSTANTIVE ALLEGATIONS**

22. The Company delivers advanced software and communications infrastructure that allow its customers to realize the business benefits of digital transformation.

23. On December 20, 2020, RigNet entered into the Merger Agreement, under which RigNet's stockholders will receive 0.1845 shares of Parent common stock per share.

24. The press release announcing the Proposed Merger provides as follows:

RigNet, Inc. (NASDAQ: RNET, the "Company"), a leading provider of ultra-secure, intelligent networking solutions and specialized applications, announced that its Board of Directors has unanimously approved the Company's entry into a definitive agreement whereby Viasat Inc. (NASDAQ: VSAT) will acquire RigNet in an all-stock transaction representing an enterprise value of $222 million, including RigNet's net debt as of September 30, 2020, based on the closing price of Viasat common stock on December 18, 2020. The strategic combination creates a vertically integrated communications company serving customers in industries that include government, airlines, residential, energy, and others by providing cutting-edge connectivity from the satellite to the end customer and delivering premier managed communications services coupled with a suite of advanced application solutions that include real-time machine learning and advanced cybersecurity.

"We are excited to announce this strategic combination with Viasat, a leading global innovator in satellite technology and service delivery," said Steven Pickett, RigNet's President and Chief Executive Officer. "This is a transformative merger with a company that is highly diversified across a number of important verticals, maintains a strong balance sheet, and is planning to expand its global satellite coverage significantly through its upcoming ViaSat-3 constellation. We believe the

merger will create new opportunities for the combined companies to serve customers even better in energy and to expand more rapidly into other vertical markets. The combined companies will also be able to further accelerate the growth of RigNet's industry-leading AI-backed machine learning business, Intelie, and our other specialized apps, across a broader customer base than RigNet could have reached independently."

Rick Baldridge, Viasat's President and Chief Executive Officer, commented, "We believe that RigNet will be a wonderful addition to Viasat's expanding commercial connectivity program. We admire what Steve and his team have built over the last several years, performing well relative to peers in the energy sector, moving up the stack, and delivering some truly exceptional capabilities that are unique among their competitors. We see RigNet as an important element in our global expansion efforts and expect to achieve accretive synergies that go well beyond traditional cost savings. There is tremendous upside potential here, and we look forward to closing the acquisition as quickly as possible so both companies and our stockholders can realize the benefits of the combination and fulfill our vision of connecting everyone, anywhere."

**Transaction Details**

Under the terms of the agreement, RigNet's stockholders will receive a fixed exchange ratio of 0.1845 shares of Viasat stock for each RigNet share owned. Based on the parties' volume weighted average prices ("VWAPs") for the 20 trading days ending on December 18, 2020, the transaction represents a 17.9% premium for RigNet's stockholders. Upon closing RigNet stockholders are expected to own approximately ~5.7% of Viasat's outstanding common stock. The all-stock transaction is intended to be tax-free to RigNet stockholders.

The transaction, which is expected to close by mid-calendar year 2021, is subject to customary closing conditions and regulatory approvals, including the approval of RigNet's stockholders. An affiliate of KKR & Co. Inc., RigNet's largest shareholder, has entered into a support agreement in which it has agreed to vote in favor of approving the merger, subject to certain conditions.

**Advisors**

Lazard Middle Market LLC and Baker Botts L.L.P. acted as RigNet's financial and legal advisors, respectively. LionTree Advisors LLC and Latham & Watkins LLP acted as Viasat's financial and legal advisors, respectively.

25.     On February 1, 2021, defendants filed the S-4, which fails to disclose material information regarding the Proposed Merger.

Financial Analyses

26. The S-4 fails to disclose material information regarding the financial analyses performed by Stifel, Nicolaus & Company, Incorporated ("Stifel"), RigNet's financial advisor. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

27. The S-4 fails to disclose the following regarding Stifel's Selected Comparable Company Analyses of RigNet and Viasat: the individual multiples for the companies.

28. The S-4 fails to disclose the following regarding Stifel's Selected Precedent Transactions Analysis: the individual multiples for the transactions.

29. The S-4 fails to disclose the following regarding Stifel's Discounted Cash Flow Analyses of RigNet, Viasat, and the combined company: (i) for RigNet, the line items used to calculate unlevered free cash flow; (ii) for Viasat and the combined company, the unlevered free cash flows and the line items used to calculate the unlevered free cash flows; (iii) the basis for applying the ranges of exit multiples; (iv) the inputs and assumptions underlying the discount rates and perpetuity growth rates; and (v) the terminal values and net debt.

Financial Projections

30. The S-4 fails to disclose material information regarding RigNet's and Viasat's financial projections. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by a company's financial advisor in support of its fairness opinion.

31. The S-4 fails to disclose the following regarding RigNet's financial projections: (i) the line items used to calculate unlevered free cash flow; and (ii) the line items used to calculate adjusted EBITDA.

32. The S-4 fails to disclose Viasat's financial projections.

33. The S-4 further fails to disclose the projected synergies expected to result from the Proposed Merger.

<u>Background of the Proposed Merger and Potential Conflicts of Interest</u>

34. The S-4 fails to disclose whether RigNet entered into confidentiality agreements that contained standstill or don't ask, don't waive provisions.

35. The S-4 fails to disclose the terms of the engagement of Lazard Middle Market LLC's ("Lazard"). Defendants must disclose: (i) the fees Lazard has received or will receive; (ii) the amount of Lazard's fee that is contingent on the closing of the Proposed Merger; (iii) whether Lazard performed prior services for any parties to the Merger Agreement; and (iv) if so, the timing and nature of the services and the fees received by Lazard.

36. If disclosed, the omitted information would significantly alter the total mix of information available to RigNet's stockholders.

## COUNT I

**Claim Against the Individual Defendants and RigNet for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

37. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading S-4, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to

make the statements therein not materially false or misleading.

39. RigNet is liable as the issuer of these statements.

40. The S-4 was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the S-4.

41. The Individual Defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

42. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

43. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the S-4 and in other information reasonably available to stockholders.

44. The S-4 is an essential link in causing plaintiff to approve the Proposed Merger.

45. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

46. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants and Viasat for Violation of Section 20(a) of the Exchange Act**

47. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

48. The Individual Defendants and Viasat acted as controlling persons of RigNet within the meaning of Section 20(a) of the Exchange Act as alleged herein.

49.     Due to their positions as officers and/or directors of RigNet and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50.     Each of the Individual Defendants and Viasat was provided with or had unlimited access to copies of the S-4 alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

52.     The S-4 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of the S-4.

53.     Viasat had supervisory control over the composition of the S-4 and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the S-4.

54.     Accordingly, the Individual Defendants and Viasat violated Section 20(a) of the Exchange Act.

55.     The Individual Defendants and Viasat had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

56.     These defendants are liable pursuant to Section 20(a) of the Exchange Act.

57. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  March 10, 2021                              **GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*

9